

AUG **9** 2007

CLERK, U.S. DISTRICT COURT
FAIRBANKS, AK

Nada Raad

1300 Viewpointe

Fairbanks, Alaska 99709

Tel: 907-479-9122


IN THE UNITED STATES DISTRICT COURT OF ALASKA


NADA I. RAAD            )

            Plaintiff )

    v.                  )

                        )

FAIRBANKS NORTH STAR    )

BOROUGH SCHOOL          )

DISTRICT                ) United States District

                        ) Court of Alaska

            Defendant   ) Case No. 97-0068CV (RRB)

                        )

_____)


## MOTON FOR RELIEF FROM THE JUDGMENT DUE TO CLERICAL ERROR UPON FRCP 60(a)

Hereby Come Plaintiff Raad, Pro se, respectfully asking this Court for Relief from Judgment from attorney fees and cost as stated in Docket 524 <u>DUE TO CLERICAL ERROR UPON FRCP 60(a)</u>. Plaintiff was and still in dept. Plaintiff needed the bond money back to pay for her debt that accumulated over the years. District Court was harsh on Plaintiff on ruling to pay

Page 1 of 22

attorney fees and cost to Defendant and to depose bond
of an amount of $10,000 instead of ruling on her favor.

With all Plaintiff's respect to this court, this
case was not a frivolous case; it has the merit and
foundation. The Ninth Circuit dissented Memorandum
dated August 24, 2006  explained why the attorney fees
should not be awarded to Defendant (EX. 1 pages 6-10).
A timely petition for rehearing and rehearing en banc
was denied by the United States Court of Appeals for
the Ninth Circuit on the following Date September 28,
2006. The US Supreme Court denied the writ of
certiorari on February 26, 2007.  On April 30, 2007,
the U.S. Supreme Court denied petition of rehearing for
Writ of certiorari.  The Ninth Circuit dissented
unpublished memorandum cited cases indicating attorneys
fees should be denied against plaintiff (EX. 1 pages 6-
10). Plaintiff should not be punished because she was
represented by counselor who argued this case. At no
point during the litigation of this case there was any
indication from the Court that the case was frivolous
or had no foundation. At the beginning of this case
Plaintiff represented herself with the help of
counselor.  Early in this case Judge Holland at the
District Court asked Plaintiff to either represented
herself or hired an attorney. Plaintiff knew nothing
about the legal system and had no choice except hiring
counselor to represent her. Over the years Plaintiff
became in debt to cover cost of living and cost related
to this case. Plaintiff had no choice except to

represent herself after the trial with no help from anyone. Plaintiff does not know up to date why her case is frivolous and why it had no foundation as the District Court stated. Plaintiff can not defend herself if there was no reason given to her to award attorney fees and ruled on favor of Defendant. The Ninth Circuit in its unpublished memorandum agreed that plaintiff establish prima facie case. (EX. 1). The bond that the District Court imposed on Plaintiff caused hardship was unreasonable. Plaintiff went in more debt when she deposed the bond and needed to pay the debt that accumulated over the years for not being employed for full time job. Plaintiff is unable to pay the attorney fees or any other fees. (See affidavit of Nada Raad).

The Ninth Circuit in its unpublished memorandum cited cases where awarding attorney fees against Plaintiff is in question (EX. 1 pages 6-10). The District Court overlooked the qualification of Plaintiff that was already established during summary judgment in this case. Defendant did not appeal superior qualification of Plaintiff after summary judgment. Plaintiff had master degree, certified in math and science, had  years of experience in education which included 8 years as in charge of natural history museum conducting lectures to public, three years as a substitute teacher and temporary teacher position in Fairbanks North Star Borough School district.  The District Court did not admit some Plaintiff's exhibits that will support her case. Regards, the Jury either

did not understand the instructions or overlook the
instructions.

This case is a title VII of the Civil Rights Act
of 1964 Civil Rights act, 42 U.S.C. 2000e et seq,. The
District Court [Docket 353] and the Ninth Circuit in
Raad v. Fairbanks North Star Borough School District,
323 F. 3d 1185-1198 (9th cir. 2003) has held that
Plaintiff established a prima facie case of
discrimination that she raised for Title VII 2000e et
seq. (EX. 1).

Plaintiff was entitled to the science position at
Lathrop High School for the school year 1993- 1994 as a
resolution for her after complaint to Defendent EEO
Charles Moore in 1992. Plaintiff complained to EEO in
1992 regarding rejecting her for a science position at
Tanana Middle School because of her accent as confirmed
during deposition of Tanana Middle School Principal
[Ex. 7]. The record reflected outstanding
recommendations regarding Plaintiff qualifications. The
District Court opinion on summary judgment reflected
the superior qualification of Plaintiff and referred to
a case by another circuit for a need of "slap on the
face to show superiority of qualification. The Ninth
Circuit Court of Appeal rejected this argument Raad v.
Fairbanks North Star Borough School District, 323 F. 3d
1185-1198 (9th cir. 2003). Plaintiff had priority over a
new hire because of her temporary teaching position for
the school year 1992-1993. Stack and Ponder were
applicants that were hired as temporary teaching

position during the 1992-1993 school year. Both were
rehired the following year with no competitive
interview (EX. 2). The attached exhibits showed that
Stack was rehired with out competitive interview and
Ponder was treated as any full time teacher where
evaluation was conducted to her during 1992-1993 school
year and rehired before any new applicants. This was
the same year that Plaintiff was hired as a temporary
teaching position and was informed by EEO that she had
a priority over new hire (EX. 3 pages 3 and 20). During
discovery period plaintiff discovered that other
temporary teachers were hired during 1992-1993 school
year and rehired with out competitive interview the
following year 1993-1994. This consisted with her
statement that she had preference to be rehired before
any new applicants. On August 2003, Plaintiff already
informed Alaska Human Rights what EEO told her about
the priority for hiring her before new applicants
before even she knew about applicants Stack and Ponder
rehired without competitive interview during discovery
(EX. 3 pages 3 and 20). This confirmed what she had
been saying through all the last 14 years that she
should be hired before any new applicants for the
school year 1993-1994. This will be a cause to look at
all the new science and math teaches that were hired
for the school year 1993-1994 including Risa Roy and
Roy Rohel, Cynthia Beal, Ross William, Curry Connie and
Michael McGill. Defendant treated other applicants more
favorable than Plaintiff during the same period

Plaintiff was not selected for teaching position. Stack
went through competitive interview during 1992-1993
school year for a temporary teaching position but he
did not go through another competitive interview when
rehired for a full time teaching position the following
year. [EX. 2]. Teresa Ponder was hired for a temporary
position during 1992-1993 school year and was rehired
for a full time position on June 14, 1993 before even
the hiring pool for the following year was established
[EX. 2]. The feed back sent by Defendant to new
applicants was on July 1993 [EX. 24]. Teresa Ponder was
hired before July 1993. Defendant insisted over the
years that applicants that held temporary teaching
positions had no preference before new hires. The
former documents showed that this was not true at the
period Plaintiff held a temporary teaching position
during 1992-1993 school year as Stack and Ponder.
Plaintiff was not given that preference to be rehired
before any new applicants as it was given to Stack and
Ponder. It was suppose to be given to Plaintiff the
same treatment. The Court and the Jury made a clerical
error of not looking at this evidence to rule on favor
of Plaintiff. Assuming Plaintiff had to compete with
Risa Roy, comparing qualification Plaintiff had a
master degree and certification in science and math,
volunteer as elementary teacher in public schools in
Beirut, Lebanon during the civil war, more than 11
years of experience in education, substituting for 3
years in FNSBSD and held a temporary teaching position

in FNSBSD. Risa Roy did not have the extensive
experience years in education as Plaintiff.

Also during August 1993, Plaintiff met with Moore, this
was the same year that Plaintiff was hired as a
temporary teaching position and was informed by EEO
that she had a priority over new hire [EX. 3 pages 3
and 20]. Defendant spent years misrepresenting
information to the Court knowingly other applicants
were rehired after holding temporary teaching position
without competitive interview in the same year
Plaintiff held a temporary teaching position. This
confirmed that Plaintiff had a priority over new hired
and should awarded the science position at Lathrop High
School for the school year 1993-1994 See International
Brotherhood of Teamsters v. United stated, 431, U.S.
324, 335 n. 15, 97 S.Ct, 1843, 1854 n. 15, 52 L. Ed. 2d
396 919977); Washington v. Garrett 10 F.3d at 1434.
Instead Plaintiff was falsely accused that she
threatened to blow up the building and refusing to
leave stating in the police log" A Lebanese woman
threatened to blow up the building and refusing to
leave." [EX. 4]. The police log was neither logged by
officer Ring nor were changes made as indicated by
Officer Ring and Dispatcher Huffman (EX. 25, EX. 26
Defendant treated other applicants more favorable than
Plaintiff during the same period Plaintiff was not
selected for teaching position. Among the jury
instructions was to see if Defendant treated other
applicants more favorable. The Court will find

Page 7 of 22

discrimination upon this previous argument. Plaintiff
presented exhibits showing that other applicants had
been treated more favorable. It was on oversight from
the District Court and/or the Jury not to look at the
preference that Appellant had over new applicants.
Plaintiff should be hired in 1993-1994 before any new
Applicants. It was also an oversight from the District
Court not to realize that Plaintiff did not make any
threat and was not yelling or screaming when she went
to see the superintendent as stated above (See Docket
532). The suspension against Plaintiff was based on
false allegations and it was only after District
Attorney declined to press charges to cover up for
discrimination and retaliation by Defendant. Defendant
spread rumors about the alleged false bomb threat
because of Plaintiff national origin and religion which
was a burden for Plaintiff to find a full time job for
many years and caused more financial hardship for
Plaintiff. See pages from depositions of Sharon Lovell,
Jerry Hartsock, Lou Bates, Kathy Harrod, Sandy McGill,
Carol Evans page, Anita Gallentine who were Defendant's
employees (Ex. 5).

There was contradiction between Lynda Sather and
Pam Hallberg statements regarding the false accusation
and Defendant's employees' statements. See Glover v.
BIC Corp, 6 F.3d 1318, 1329 (9th Cir. 1993) Scott v.IBM
Corp, 196 F.R.D. 233, 248-251 (D. New Jersey, 2000)
where inconsistency will implicate discrimination.
Plaintiff needed to show that the employer's proffered

explanation is unworthy of credence because it is
internally inconsistent or other wise not believable or
directly showing that unlawful discrimination more
likely motivated the employer; Civil Rights Act of 1964
701 at seq as amended 42 U.S.C.A. 2000e seq." Raad v.
Fairbanks North Star Borough School District, 323 F. 3d
1185, 1187-88 (9th cir. 2003).

     In 1993 Moore told Plaintiff that the District did
not want to hire her because of her accent. [EX. 6, Ex.
7]. Plaintiff told Moore that she intended to contact
an attorney regarding her employment matter. [EX. 3,
Ex. 6]. Plaintiff then tried to make an appointment to
see Rick Cross, the District Superintendent. [EX. 8].
Plaintiff tried to explain to the Pam Hallberg that she
was frustrated and upset and did not want her anger to
"blow up" [EX. 8]. Plaintiff was not loud or screaming
or yelling when she was in the superintendent's
reception area [EX. 9, EX. 10]. Pam Hallberg told
plaintiff that the superintendent will not see
unsuccessful applicant [EX. 9]. Upon Plaintiff's second
visit to the superintendent's reception area Lynda
Sather came out of her office and asked Plaintiff to go
back to Moore's office for discrimination [EX. 11].
Pam Hallberg testified that she told Cross that
Plaintiff wanted to see him. [EX. 9, EX. 12]. Cross
testified that no one told him that Plaintiff wanted to
see him. [EX. 9, EX 13]. Defendant's employees who
accused Plaintiff of making a threat to blow up the
building, Pam Hallberg and Lynda Sather, admitted that

Page 9 of 22

Plaintiff Raad spoke with an accent [EX. 10] and was
difficult to understand [EX. 9, EX 10]. The
superintendent, Rick Cross denied any knowledge that
Plaintiff was Lebanese [EX. 13] at the date of his
deposition in 1998. Rick Cross was previously
interviewed by Alaska Human Rights Commission and was
familiar with Plaintiff's discrimination complaint with
Alaska Human Rights Commission prior to his deposition
[EX. 13]. Hallberg informed Cross about Plaintiff in
1993. [EX. 12} Hallberg called the Fairbanks Police
Department on August 13, 1993, and reported that a
"Lebanese woman" had threatened to blow up a building
and refused to leave the building. [EX. 4]. No one had
asked Plaintiff to leave the building, before calling
the police. [EX. 9, EX. 10, EX. 13]. In her statement
to the police, Sather stated that the Personnel
Director, Gallentine, had called Sather earlier on the
morning of August 13, and told Sather that an upset
applicant had seen her and Moore and wasn't satisfied
and still wanted to see Superintendent Cross. [EX. 11].
Gallentine called the superintendent office and
informed them that unhappy applicant referring to
plaintiff was coming to see the superintendent (EX. 9,
EX. 11, EX. 12, EX. 14]. Sather came from her office
when Plaintiff arrived to the superintendent's
reception area. Sather called Pam Hallberg to talk to
Plaintiff described her as unhappy applicant [EX. 12]
and went back to her office. Hallberg confronted
Plaintiff and in a sarcastic manner asked Plaintiff if

this was a matter of life or death in response to
Hallberg, Plaintiff replied with a yes [EX. 11].
Plaintiff informed Plaintiff that she was angry and
frustrated and she did not want to blow up. [EX. 3, EX.
8]. Hallberg informed Plaintiff that the superintendent
was on the phone. Plaintiff Lift to Moore office to ask
him to come with him to the superintendent office but
Moore insisted that Plaintiff to go back by herself to
try to see the superintendent Rick Cross [EX. 8].
Plaintiff went the second visit to see the
superintendent and Halberg informed Plaintiff that the
superintendent is not going to see unsuccessful
applicant [EX. 9] Hallberg had spoken to regarding the
"blow up" incident prior to calling the police, with
Sather, Lovell and Cross. [EX. 12]. Gallentine was
aware of Plaintiff's national origin and religion and
Plaintiff's personnel file stated that she was
Lebanese. [EX. 15]. The Fairbanks Police Department
("FPD") has a log report showing a call was placed to
FPD by Pam Hallberg at 9:57 A.M. reporting that a
"Lebanese woman" threatened to blow the building up and
refused to leave. [EX. 4] See also Dispatched Huffman
and officer Ring [EX. 25, EX. 26] The FPD responded to
Hallberg's complaint and escorted Plaintiff from the
building. [EX. 3, EX. 16].

The police arrived at EEO Charles Moore Office
where Plaintiff was sitting and not in a possession of
explosive device [EX. 16]. In front of Charles Moore
Plaintiff ask the Police why they were her, the Police

said that they received a call stating Plaintiff
threaten to blow up the building. Plaintiff stated to
the police that she was talking about her anger in
front of EEO Charles Moore [EX. 16]. The Police stated
that "Raad speaks in accented English"[EX. 16]
Defendant's employee, Anita Gallentine, went to the
police department and filled out a complaint stating
that she was concerned that Plaintiff could construct
an explosive device [Ex. 14]. This statement
demonstrated Ms. Gallentine's prejudice against
Plaintiff's National Origin and religion. Gallentine
and/or Moore who went to the station requested D.A.O.
screening [Ex. 16, EX. 13]. The District attorney
rejected the case [Ex. 16]. Charles Moore, EEO whom
Plaintiff complained to and who heard Plaintiff telling
the police that she was talking about her anger went
with Gallentine to the Police Department to press
charges against Plaintiff knowingly he knew that
Plaintiff was talking about her anger.

Defendant's employees, Gallentine, Moore, Sather,
Hallberg, Cross, Lovell all knew that Plaintiff was
rejected for a teaching position and all knew that
Plaintiff was trying to resolve her discrimination
complaint with the EEO officer before Plaintiff was
falsely accused of a bomb threat, complaint to the
Fairbanks Police Department and pressed charges against
her with the District attorney by the District's above
employees [EX. 12, EX. 14, EX. 17, EX. 18]

Fairbanks Police Officer Aaron Ring interviewed

Page 12 of 22

Hallberg and Sather at approximately an hour and one-
half after the alleged incident. [EX. 11, EX. 16].
Neither Hallberg, nor Sather indicated that they were
immediately concerned by Plaintiff's statement. [EX.
11] .Officer Ring when asked Hallberg shortly after the
alleged accident and could not remember what Plaintiff
said:

> Officer Ring: I know that she had somewhat of an
> accent,
> and what she had told the officer was that she had
> said - something about herself blowing up, meaning
> her temper.
> Pam Hallberg: No. That wasn't the impression I
> got, because she just said either I'll blow up
> this place, or I'll blow up this building.
> Officer Ring: Well, which? [EX. 11]

Lynda Sather went back to her office [EX. 11, Ex.
12]. The whole conversation between Pam Hallberg and
Plaintiff Raad should take less than a minute. Lynda
Sather came out of her office after Pam Hallberg talked
to Plaintiff Raad [EX. 9, EX. 11]. Both Pam Hallberg
and Lynda Sather continued to do their work after
Plaintiff left {EX. 11, EX. 18]. Hallberg was working
behind the counter [EX. 11] Hallberg told Raad that the
superintendent is not going to see unsuccessful
applicant where Sather denied that this happened [Ex.
10]. Sather came out of her office later {EX. 12]. Both
Sather and Hallberg denied if Plaintiff was repeating
her self [EX. 18]. Hallberg denied if Sather talked to
Raad in her presence [EX. 18]

Hallberg called the police and gave them false information stating that Raad a Lebanese woman threaten to blow up the building and refusing to leave. Both Hallebrg and Sather admitted that Raad did not ask Plaintiff to leave [EX. 9, Ex. 13]. Hallberg and Sather stated that Plaintiff left [EX. 11, EX, 18]

Hallberg stated when Gallentine asked her if Plaintiff Raad get close to her after Plaintiff returned the second time to the superintendent office [EX. 18]:

> Hallberg:as close as possible. There's a counter, if you look at the superintendent's office, there's kind of a work station and there's a higher counter and she leaned over the counter to talk to me
> Gallentine: and you were sitting down?
> Hallberg: and then I stood up after that
> Gallentine: yes
> Hallberg: and she kind of straightened up too. [EX. 18].
> Gallentine: Did you then call the police?
> Hallberg: I informed Mr. cross what the conversation was, and he said to, you know, call the police.
> Gallentine: Did you specifically call them?
> Hallberg: Yes I did

Hallberg called the police after the second time Plaintiff visited the superintendent office and telling Plaintiff that the superintendent is not going to see unsuccessful Applicant {EX. 18}. Hallberg changed the story shortly after Gallentine redirect her in her question  and stated that she called the police after Plaintiff visited the superintendent office the first time[EX. 18]. The District insisted for years that the

Page 14 of 22

Police was called immediately after the false
accusation. (EX. 18] Pam Hallberg statement
contradicted what Defendant and Defendant employees
falsely claimed through all these year that they felt
threat and that's why the police was called
immediately. Plaintiff left the superintendent office
when she was asked to go back to EEO Moore's office for
discrimination [EX. 11]. Plaintiff did not make any
threat.

Sather could not tell who made the call to the
police [EX. 18] and insisted that the police was called
after the first time Plaintiff was in the office [EX.
18]. Sather went back to her office and continued to do
work [EX. 18]. In Sather's written statement she said
that Plaintiff was difficult to understand but then she
changed her mind and stated that she did not have any
difficulty understanding Plaintiff [EX. 17, EX 18].
Sather denied if Hallberg told Plaintiff that the
superintendent is not going to see unsuccessful
applicant [EX. 10]. Pam Hallberg admitted that she
informed Plaintiff Raad that the superintendent is not
going to see unsuccessful applicant [EX. 9].
Plaintiff was not yelling or shouting and was not
threatening [EX. 9, EX. 10]. Sather stated that she
could not understand Plaintiff [EX. 10, EX. 17]. Both
never asked Apepllant Raad for clarification [EX. 10].
On August 18, 2004, without the knowledge of Plaintiff,
the Fairbanks District Attorney's Office declined to
press any charges against Plaintiff upon the District's

request [EX. 14, EX. 16]. On August 30 or 31, 1993,
Plaintiff applied for substitute teaching positions
with the District. [EX. 3, EX 6]. On August 27, 1993,
Plaintiff contacted the Alaska Human Rights Commission
and submitted her intake questionnaire regarding the
reprisal, national origin and religious discrimination
by the District in failing to hire her during 1991-
1993. [EX. 3}. Plaintiff signed her official Alaska
Human Rights discrimination complaint against the
District and filed it with the Commission on September
16, 1993. [EX. 19] and received by the District on
September 27, 1993 [EX. 19]. On September 2, 1993
Defendant's requested the record from Fairbanks Police
Department [Ex. 14 page 3]. In September 1993,
Gallentine requested from Pam Hallberg and Lynda Sather
to write a statement regarding what occurred on August
13, 2004 as it was presented in FNSBSD hearing that
occurred toward the end of September 1993[EX. 12, EX
17]

On September 8, 1993, Plaintiff received a letter
stating that the FNSBSD intended to take disciplinary
actions against her, because she had threatened to blow
up a building while she was at the Superintendent's
Office. [EX. 3]. Defendant refused to look at evidence
Plaintiff had been discriminated against at the
disciplinary hearing. [EX. 8]. Following the
disciplinary hearing, Percy Houts, issued a letter
affirming Gallentine's prior decision to ban Plaintiff
from employment for 1993-1994 school-year. [EX. 21].

Houts falsely stated that Sather testified that
Plaintiff Raad was repeating herself to blow up the
building. [EX. 21] Gallentine had previously sent a
letter on September 3, 1993 to all the schools banning
Plaintiff from employment with no time limit. [EX. 22].
Plaintiff later learned that the disciplinary officer,
Percy Houts, had been a hiring authority for several
hires challenged as discriminatory by Plaintiff in her
Alaska Human rights commission complaint. [EX. 23].
The above argument showed inconsistency in the
Defendant's employees' statements.

As with respect to cost, the District Court made a
clerical error by including cost for deposits taking in
another procedure with Alaska Human Rights Commission.
Plaintiff was not even involved in these depositions.

If the District Court will look at the
inconsistency among the above Defendant's employee's
statements then discrimination and retaliation against
Plaintiff and a relief from Judgement stated in Docket
524 discrimination and retaliation shall be
established.

Plaintiff had to borrow money and get loans for
living and for paying her Counselor attorney fees and
cost. Plaintiff is still in dept. Defendant
misrepresented to the District Court the financial
situation of Plaintiff. Through all these years,
Plaintiff was represented by a counselor that presented
her case. The Court should not punish Plaintiff if she
lost her case. Plaintiff still believed that Responded

discriminated and retaliated against her because of her national origin and religion. The Court oversight the evidence of discrimination and retaliation cited in this case on favor of Plaintiff.

In 2001, Judge Holland in the District court agreed that prima facie case had been established and followed the guideline of the Ninth circuit Court of Appeal by denying attorney fees against Plaintiff when Defendant filed summary judgment by referring to <u>Warren v. City of Carlsbad</u>, 58 F. 3d 439, 444 (9th Cir. 1995). The District court asked Defendant to appeal awarding attorney fees if they do not agree with his decision. Defendant declined. (District Court Docket # 385). Plaintiff counselor appealed to the Ninth Circuit Court of appeal in 2001. At that time discovery was completed. Mediation effort by the Ninth Circuit was not successful. All parties signed on confidentiality of this meeting. Defendant did not respect the confidentiality agreement and release partial information that created bias and prejudice (Docket 543 page 12). In 2003 the Ninth circuit ordered to go back to trial. District court ordered awarding attorney fees for Defendant of an amount of $150,000 stating that the case is frivolous ignoring the guidelines to award attorney fees against Plaintiff. The District Court gave no explanation why the case was frivolous. The District Court failed to show if plaintiff's claims lacked merit, had no foundation or not reasonable, frivolous or brought in a bad faith. The district Court

at three occasions gave contradicting explanation that cannot be reconciled. The district court awarded attorney fees against Plaintiff when stated first  that the case is entirely frivolous then stated that there was "no rational basis for plaintiff allegation of discrimination and that the plaintiff claims were frivolous and totally lacking any factual foundation" (EX 1).  In a later order, the district court did note that Raad presented one "legitimate jury issue" namely, "that she was disciplined inordinately because of her race and or religion after the incident in the superintendent's office." (EX. 1). The District Court declined to follow the guidelines of the Ninth circuit Court of appeal where petition established prima facie case and went to trial upon an order Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185-1198 (9th cir. 2003) Plaintiff can not defend herself if no explanation given to why the case is frivolous and had no foundation.

Plaintiff received right-to sue letter from the EEOC, thus indication that there was "an adequate basis in law and facts" to pursue the claim and indicating that the case was not without merit; Jensen v. Stangel, 762 F. 2d 815, 818 (9th Cir 1985).

The District Court did not find that any of the discoveries sought by Plaintiff was vexatious, frivolous or sought in bad faith. (District court docket 269).

Plaintiff established prima facie case and went to

Page 19 of 22

trial Raad v. Fairbanks North Star Borough School
District, 323 F. 3d 1185, 1187 (9th cir. 2003). In
Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir.
1995), "Suggesting that a plaintiff who makes out a
prima facie case under Title VII cannot be found to
have presented a claim that is "Frivolous, unreasonable
or groundless Id. At 445. In so stating the Ninth
Circuit has reference to the case of Marguart v. Lodge
837, Int'l Ass'n of Machinists, 26 F.3d 842, 853 (8th
Circuit 1994).
Furthermore, the U.S. Supreme Court's ruling that Civil
Rights plaintiff's do not need any direct evidence of
discrimination and can proceed to trial if they
establish a prima facie case of discrimination and
present evidence showing that the employer's excuse is
a pretext. See Reeves v. Sanderson Plumbing Products.
Inc., 4 U.S (99-536) 530 U.S. 133 (2000) 197 F. 3d 688.

   The district court did note after awarding
attorney fees to defendent that Plaintiff presented one
"legitimate jury issue" namely, "that she was
disciplined inordinately because of her race and or
religion after the incident in the superintendent's
office." (EX. 1).  The District Court failed to reverse
awarding attorney fees for Defendant after admitting
that Plaintiff presented one "legitimate jury issue".
(Ex. 1) This indicated that this case does not lack a
reasonable or arguable basis in law of fact which in
return make it not frivolous or lack of foundation. The
U.S. Supreme Court stated   that "A claim is frivolous

if it lacks a reasonable or arguable basis in law or fact. <u>Neitzke v. Williams,</u> 490 U.S. 319, 325,109 S.Ct. 1827, 1831, 104 L.Ed.2d 338, 347 (1989)".

The district court did not give an explanation for any unusual development at trial referring to <u>AFSMCE v. County of Nassau</u>, 96 F. 3d 644 (2d Cir 1996) "The district court however, points to no such unusual circumstance here, and I am aware of none…..and there was no explanation by the district court that takes account of the prior reversal of summary judgment in this case, I would reverse the fee award" (EX. 1).

The District Court did not give any adequate explanation why the fee award was justified. "A fee award without adequate justification cannot stand" (Appendix A)   See <u>Tutor-Saliba Corp. v.  City of Hailey</u>, 452 F. 3d 1055, 1065 (9th Cir. 2006); <u>Benton v. Or. Student Assitance Comm'n</u> , 421 F. 3d 901, 904 (9th Cir. 2005); <u>Cummings v. Connell</u>, 402, F. 3d 936, 947 (9th Cir. 2005).

The US Supreme Court referred to stringent standards apply to fee awards against plaintiffs in civil rights cases. The district court should award a prevailing Defendant attorney's fees only if the plaintiff action was frivolous, unreasonable or without foundation and none of these applied that Plaintiff is aware of, See <u>Christianburg Garment Co. v</u>. <u>EEOC</u>, 434 U.S. 412, 421-22 (1978). <u>United States Steel Corp. v. United States,</u> 519 F.2d 359, 362 (CA3) <u>Carrion v. Yeshiva University</u>, 535 F.2d 722 (Cir Two).

Plaintiff met all the criteria as discussed above that showed that her case is not frivolous and had foundation and had rational basis for Plaintiff allegation of discrimination and retaliation.

Plaintiff depended on debt to pay the bond that caused more hardship to her. Attached Affidavit of Nada Raad.

For the reasons stated above Plaintiff is asking this Court to reverse and vacate Awarding attorney fees without justification and any cost absent that disposition, Plaintiff is asking this court for an explanation both as for the reason for the award and as to the amount as stated in exhibit 1 page 10, and allow Plaintiff to file another motion pending this motion to proof her case of discrimination and retaliation.

Order is attached

Respectfully submitted.


DATED THIS **7** DAY OF August **8**, 2007

_Nada Raad_

Nada Raad, pro se


CERTIFICATE OF SERVICE
I hereby certify that a true copy of
the above document and attachments were [x] mailed
[ ] faxed [] hand delivered to:
Peter C. Partnow at:
Lane Powell Spears Lubersky LIP
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
and a courtesy copy was mailed to Robert Sparks
at 1552 Noble Street
Fairbanks, Alaska 99701
this **7** day of August, 2007.

_Nada Raad_

Nada Raad, pro se


Page 22 of 22