

AUG 13 2007

**CLERK, U.S. DISTRICT COURT
FAIRBANKS, AK**

Nada Raad

1300 Viewpointe

Fairbanks, Alaska 99709

Tel: 907-479-9122

IN THE UNITED STATES DISTRICT COURT OF ALASKA

| | |
|---|---|
| NADA I. RAAD | ) |
| Plaintiff | ) |
| v. | ) |
| FAIRBANKS NORTH STAR | ) |
| BOROUGH SCHOOL | ) |
| DISTRICT | ) United States District |
| | ) Court of Alaska |
| Defendant | ) Case No. 97-0068CV (RRB) |
| | ) |

**RESPOND TO DEFENDANT MOTION TO RELEASE FUNDS TO
DEFENDANT PURSUANT TO DEFENDANT'S WRIT OF EXECUTION**

Hereby Come Plaintiff Raad, Pro se, respectfully asking
this Court to deny Defendant Motion To Release Funds To
Defendant Pursuant To Defendant's Writ Of Execution. On
August 9, 2007 Plaintiff filed in this Court for Relief
from Judgment from attorney fees and cost as stated in
Docket 524 DUE TO CLERICAL ERROR UPON FRCP 60(a). This
Court imposed the bond pursuant to FRAP 7. Plaintiff is
entitled to have the bond back because it was a dept.
Plaintiff respectfully asking this court for
exoneration of the bond to Plaintiff Nada Itani Raad in

response to Docket 531 dated July 9, 2007. Defendant misrepresent information to this Court Plaintiff was and still in dept. Plaintiff needed the bond money back to pay for her debt that accumulated over the years for being unemployed. District Court was harsh on Plaintiff on ruling to pay attorney fees and cost to Defendant and to depose bond of an amount of $10,000 instead of ruling on her favor.

This case was not a frivolous case; it has the merit and foundation. The Ninth Circuit dissented order dated August 24, 2006 explained why the attorney fees should not be awarded to Defendant (EX. 1 pages 6-10). A timely petition for rehearing and rehearing en banc was denied by the United States Court of Appeals for the Ninth Circuit on the following Date September 28, 2006. The US Supreme Court denied the writ of certiorari on February 26, 2007 as many other cases. On April 30, 2007, the U.S. Supreme Court denied petition of rehearing for Writ of certiorari. The Ninth Circuit dissented unpublished memorandum cited cases indicating attorneys fees should be denied against plaintiff (EX. 1 pages 6-10). The majority made assumption for the District Court ruling in regards to awarding attorney fees. Plaintiff should not be punished because she was represented by counselor who argued this case. At no point during the litigation of this case there was any indication from the Court that the case was frivolous or had no foundation. At the beginning of this case Plaintiff represented herself

with the help of counselor.  Early in this case Judge
Holland at the District Court asked Plaintiff to either
represented herself or hired an attorney. Plaintiff
knew nothing about the legal system and had no choice
except hiring counselor to represent her. Over the
years Plaintiff became in debt to cover cost of living
and cost related to this case. Plaintiff had no choice
except to represent herself after the trial with no
help from anyone. Plaintiff does not know up to date
why her case is frivolous and why it had no foundation
as the District Court stated. Plaintiff can not defend
herself if there was no reason given to her to award
attorney fees and ruled on favor of Defendant. The
Ninth Circuit in its unpublished memorandum agreed that
plaintiff establish prima facie case. (EX. 1). The bond
that the District Court imposed on Plaintiff caused
hardship was unreasonable. Plaintiff went in more debt
when she deposed the bond and needed to pay the debt
that accumulated over the years for not being employed
for full time job. Plaintiff is unable to pay the
attorney fees or any other fees to Defendant.

The Ninth Circuit in its unpublished memorandum
cited cases where awarding attorney fees against
Plaintiff is in question (EX. 1 pages 6-10). The
District Court overlooked the qualification of
Plaintiff that was already established during summary
judgment in this case. Defendant did not appeal
superior qualification of Plaintiff after summary
judgment. Plaintiff had master degree, certified in

math and science, had  years of experience in education
which included 8 years as in charge of natural history
museum conducting lectures to public, three years as a
substitute teacher and temporary teacher position in
Fairbanks North Star Borough School district.  The
District Court did not admit some Plaintiff's exhibits
that will support her case. Regards, the Jury either
did not understand the instructions or overlook the
instructions.

This case is a title VII of the Civil Rights Act
of 1964 Civil Rights act, 42 U.S.C. 2000e et seq,. The
District Court [Docket 353] and the Ninth Circuit in
Raad v. Fairbanks North Star Borough School District,
323 F. 3d 1185-1198 (9th cir. 2003) has held that
Plaintiff established a prima facie case of
discrimination that she raised for Title VII 2000e et
seq. (EX. 1).

Plaintiff was entitled to the science position at
Lathrop High School for the school year 1993- 1994 as a
resolution for her after complaint to Defendent EEO
Charles Moore in 1992. Plaintiff complained to EEO in
1992 regarding rejecting her for a science position at
Tanana Middle School because of her accent as confirmed
during deposition of Tanana Middle School Principal
[Ex. 7]. The record reflected outstanding
recommendations regarding Plaintiff qualifications. The
District Court opinion on summary judgment reflected
the superior qualification of Plaintiff and referred to
a case by another circuit for a need of "slap on the

face to show superiority of qualification. The Ninth
Circuit Court of Appeal rejected this argument Raad v.
Fairbanks North Star Borough School District, 323 F. 3d
1185-1198 (9th cir. 2003). Plaintiff had priority over a
new hire because of her temporary teaching position for
the school year 1992-1993. Stack and Ponder were
applicants that were hired as temporary teaching
position during the 1992-1993 school year. Both were
rehired the following year with no competitive
interview (EX. 2). The attached exhibits showed that
Stack was rehired with out competitive interview and
Ponder was treated as any full time teacher where
evaluation was conducted to her during 1992-1993 school
year and rehired before any new applicants. This was
the same year that Plaintiff was hired as a temporary
teaching position and was informed by EEO that she had
a priority over new hire (EX. 3 pages 3 and 20). Stack
went through competitive interview during 1992-1993
school year for a temporary teaching position but he
did not go through another competitive interview when
rehired for a full time teaching position the following
year. [EX. 2]. Teresa Ponder was hired for a temporary
position during 1992-1993 school year and was rehired
for a full time position on June 14, 1993 before even
the hiring pool for the following year was established
[EX. 2]. The feed back sent by Defendant to new
applicants was on July 1993 [EX. 24]. Teresa Ponder was
hired before July 1993. Defendant insisted over the
years that applicants that held temporary teaching

positions had no preference before new hires. The
former documents showed that this was not true at the
period Plaintiff held a temporary teaching position
during 1992-1993 school year as Stack and Ponder. The
Court made a clerical error of not looking at this
evidence to rule on favor of Plaintiff. Assuming
Plaintiff had to compete with Risa Roy, comparing
qualification Plaintiff had a master degree and
certification in science and math, volunteer as
elementary teacher in public schools in Beirut, Lebanon
during the civil war, more than 11 years of experience
in education, substituting for 3 years in FNSBSD and
held a temporary teaching position in FNSBSD. Risa Roy
did not have the extensive experience years in
education as Plaintiff. See International Brotherhood
of Teamsters v. United stated, 431, U.S. 324, 335 n.
15, 97 S.Ct, 1843, 1854 n. 15, 52 L. Ed. 2d 396
919977); Washington v. Garrett 10 F.3d at 1434. Instead
Plaintiff was falsely accused that she threatened to
blow up the building and refusing to leave stating in
the police log" A Lebanese woman threatened to blow up
the building and refusing to leave." [EX. 4]. The
police log was neither logged by officer Ring nor were
changes made as indicated by Officer Ring and
Dispatcher Huffman (EX. 25, EX. 26). It was also an
oversight from the District Court not to realize that
Plaintiff did not make any threat and was not yelling
or screaming when she went to see the superintendent as
stated above (See Docket 532). The suspension against

Plaintiff was based on false allegations and it was
only after District Attorney declined to press charges
to cover up for discrimination and retaliation by
Defendant. Defendant spread rumors about the alleged
false bomb threat because of Plaintiff national origin
and religion which was a burden for Plaintiff to find a
full time job for many years and caused more financial
hardship for Plaintiff. (Ex. 5).

There was contradiction between Lynda Sather and
Pam Hallberg statements regarding the false accusation
and Defendant's employees' statements. See Glover v.
BIC Corp, 6 F.3d 1318, 1329 (9th Cir. 1993) Scott v. IBM
Corp, 196 F.R.D. 233, 248-251 (D. New Jersey, 2000)
where inconsistency will implicate discrimination.
Plaintiff needed to show that the employer's proffered
explanation is unworthy of credence because it is
internally inconsistent or other wise not believable or
directly showing that unlawful discrimination more
likely motivated the employer; Civil Rights Act of 1964
701 at seq as amended 42 U.S.C.A. 2000e seq." Raad v.
Fairbanks North Star Borough School District, 323 F. 3d
1185, 1187-88 (9th cir. 2003).

In 1993 Moore told Plaintiff that the District did
not want to hire her because of her accent. [EX. 6, Ex.
7]. Plaintiff told Moore that she intended to contact
an attorney regarding her employment matter. [EX. 3,
Ex. 6]. Plaintiff then tried to make an appointment to
see Rick Cross, the District Superintendent. [EX. 8].
Plaintiff tried to explain to the Pam Hallberg that she

was frustrated and upset and did not want her anger to
"blow up" [EX. 8]. Plaintiff was not loud or screaming
or yelling when she was in the superintendent's
reception area [EX. 9, EX. 10]. Pam Hallberg told
plaintiff that the superintendent will not see
unsuccessful applicant [EX. 9]. Upon Plaintiff's second
visit to the superintendent's reception area Lynda
Sather came out of her office and asked Plaintiff to go
back to Moore's office for discrimination [EX. 11].
Pam Hallberg testified that she told Cross that
Plaintiff wanted to see him. [EX. 9, EX. 12]. Cross
testified that no one told him that Plaintiff wanted to
see him. [EX. 9, EX 13]. Defendant's employees who
accused Plaintiff of making a threat to blow up the
building, Pam Hallberg and Lynda Sather, admitted that
Plaintiff Raad spoke with an accent [EX. 10] and was
difficult to understand [EX. 9, EX 10]. The
superintendent, Rick Cross denied any knowledge that
Plaintiff was Lebanese [EX. 13] at the date of his
deposition in 1998. Rick Cross was previously
interviewed by Alaska Human Rights Commission and was
familiar with Plaintiff's discrimination complaint with
Alaska Human Rights Commission prior to his deposition
[EX. 13]. Hallberg informed Cross about Plaintiff in
1993. [EX. 12} Hallberg called the Fairbanks Police
Department on August 13, 1993, and reported that a
"Lebanese woman" had threatened to blow up a building
and refused to leave the building. [EX. 4]. No one had
asked Plaintiff to leave the building, before calling

the police. [EX. 9, EX. 10, EX. 13]. In her statement
to the police, Sather stated that the Personnel
Director, Gallentine, had called Sather earlier on the
morning of August 13, and told Sather that an upset
applicant had seen her and Moore and wasn't satisfied
and still wanted to see Superintendent Cross. [EX. 11].
Gallentine called the superintendent office and
informed them that unhappy applicant referring to
plaintiff was coming to see the superintendent (EX. 9,
EX. 11, EX. 12, EX. 14]. Sather came from her office
when Plaintiff arrived to the superintendent's
reception area. Sather called Pam Hallberg to talk to
Plaintiff described her as unhappy applicant [EX. 12]
and went back to her office. Hallberg confronted
Plaintiff and in a sarcastic manner asked Plaintiff if
this was a matter of life or death in response to
Hallberg, Plaintiff replied with a yes [EX. 11].
Plaintiff informed Plaintiff that she was angry and
frustrated and she did not want to blow up. [EX. 3, EX.
8]. Hallberg informed Plaintiff that the superintendent
was on the phone. Plaintiff Lift to Moore office to ask
him to come with him to the superintendent office but
Moore insisted that Plaintiff to go back by herself to
try to see the superintendent Rick Cross [EX. 8].
Plaintiff went the second visit to see the
superintendent and Halberg informed Plaintiff that the
superintendent is not going to see unsuccessful
applicant [EX. 9] Hallberg had spoken to regarding the
"blow up" incident prior to calling the police, with

Sather, Lovell and Cross. [EX. 12]. Gallentine was aware of Plaintiff's national origin and religion and Plaintiff's personnel file stated that she was Lebanese. [EX. 15]. The Fairbanks Police Department ("FPD") has a log report showing a call was placed to FPD by Pam Hallberg at 9:57 A.M. reporting that a "Lebanese woman" threatened to blow the building up and refused to leave. [EX. 4] See also Dispatched Huffman and officer Ring [EX. 25, EX. 26] The FPD responded to Hallberg's complaint and escorted Plaintiff from the building. [EX. 3, EX. 16].

The police arrived at EEO Charles Moore Office where Plaintiff was sitting and not in a possession of explosive device [EX. 16]. In front of Charles Moore Plaintiff ask the Police why they were her, the Police said that they received a call stating Plaintiff threaten to blow up the building. Plaintiff stated to the police that she was talking about her anger in front of EEO Charles Moore [EX. 16]. The Police stated that "Raad speaks in accented English"[EX. 16] Defendant's employee, Anita Gallentine, went to the police department and filled out a complaint stating that she was concerned that Plaintiff could construct an explosive device [Ex. 14]. This statement demonstrated Ms. Gallentine's prejudice against Plaintiff's National Origin and religion. Gallentine and/or Moore who went to the station requested D.A.O. screening [Ex. 16, EX. 13]. The District attorney rejected the case [Ex. 16]. Charles Moore, EEO whom

Plaintiff complained to and who heard Plaintiff telling
the police that she was talking about her anger went
with Gallentine to the Police Department to press
charges against Plaintiff knowingly he knew that
Plaintiff was talking about her anger.

Fairbanks Police Officer Aaron Ring interviewed
Hallberg and Sather at approximately an hour and one-
half after the alleged incident. [EX. 11, EX. 16].
Neither Hallberg, nor Sather indicated that they were
immediately concerned by Plaintiff's statement. [EX.
11] .Officer Ring when asked Hallberg shortly after the
alleged accident and could not remember what Plaintiff
said:

> Officer Ring: I know that she had somewhat of an
> accent,
> and what she had told the officer was that she had
> said - something about herself blowing up, meaning
> her temper.
> Pam Hallberg: No. That wasn't the impression I
> got, because she just said either I'll blow up
> this place, or I'll blow up this building.
> Officer Ring: Well, which? [EX. 11]

Lynda Sather went back to her office [EX. 11, Ex.
12]. The whole conversation between Pam Hallberg and
Plaintiff Raad should take less than a minute. Lynda
Sather came out of her office after Pam Hallberg talked
to Plaintiff Raad [EX. 9, EX. 11]. Both Pam Hallberg
and Lynda Sather continued to do their work after

Plaintiff left {EX. 11, EX. 18]. Hallberg was working
behind the counter [EX. 11] Hallberg told Raad that the
superintendent is not going to see unsuccessful
applicant where Sather denied that this happened [Ex.
10]. Sather came out of her office later {EX. 12]. Both
Sather and Hallberg denied if Plaintiff was repeating
her self [EX. 18]. Hallberg denied if Sather talked to
Raad in her presence [EX. 18]

Hallberg called the police and gave them false
information stating that Raad a Lebanese woman threaten
to blow up the building and refusing to leave. Both
Hallebrg and Sather admitted that Raad did not ask
Plaintiff to leave [EX. 9, Ex. 13]. Hallberg and Sather
stated that Plaintiff left [EX. 11, EX, 18]

Hallberg stated when Gallentine asked her if
Plaintiff Raad get close to her after Plaintiff
returned the second time to the superintendent office
[EX. 18]:

> Hallberg:as close as possible. There's a counter,
> if you look at the superintendent's office,
> there's kind of a work station and there's a
> higher counter and she leaned over the counter to
> talk to me
> Gallentine: and you were sitting down?
> Hallberg: and then I stood up after that
> Gallentine: yes
> Hallberg: and she kind of straightened up too.
> [EX. 18].
> Gallentine: Did you then call the police?

Hallberg: I informed Mr. cross what the
conversation was, and he said to, you know, call
the police.

Gallentine: Did you specifically call them?

Hallberg: Yes I did

Hallberg called the police after the second time
Plaintiff visited the superintendent office and telling
Plaintiff that the superintendent is not going to see
unsuccessful Applicant {EX. 18}. Hallberg changed the
story shortly after Gallentine redirect her in her
question  and stated that she called the police after
Plaintiff visited the superintendent office the first
time[EX. 18]. The District insisted for years that the
Police was called immediately after the false
accusation. (EX. 18] Pam Hallberg statement
contradicted what Defendant and Defendant employees
falsely claimed through all these year that they felt
threat and that's why the police was called
immediately. Plaintiff left the superintendent office
when she was asked to go back to EEO Moore's office for
discrimination and was never asked to leavge the
building before the police was called[EX. 11].
Plaintiff did not make any threat.

Sather could not tell who made the call to the
police [EX. 18] and insisted that the police was called
after the first time Plaintiff was in the office [EX.
18]. Sather went back to her office and continued to do
work [EX. 18]. In Sather's written statement she said

that Plaintiff was difficult to understand but then she
changed her mind and stated that she did not have any
difficulty understanding Plaintiff [EX. 17, EX 18].
Sather denied if Hallberg told Plaintiff that the
superintendent is not going to see unsuccessful
applicant [EX. 10]. Pam Hallberg admitted that she
informed Plaintiff Raad that the superintendent is not
going to see unsuccessful applicant [EX. 9].
Plaintiff was not yelling or shouting and was not
threatening [EX. 9, EX. 10]. Sather stated that she
could not understand Plaintiff [EX. 10, EX. 17]. Both
never asked Apepllant Raad for clarification [EX. 10].
On August 18, 2004, without the knowledge of Plaintiff,
the Fairbanks District Attorney's Office declined to
press any charges against Plaintiff upon the District's
request [EX. 14, EX. 16]. On August 30 or 31, 1993,
Plaintiff applied for substitute teaching positions
with the District. [EX. 3, EX 6]. On August 27, 1993,
Plaintiff contacted the Alaska Human Rights Commission
and submitted her intake questionnaire regarding the
reprisal, national origin and religious discrimination
by the District in failing to hire her during 1991-
1993. [EX. 3}. Plaintiff signed her official Alaska
Human Rights discrimination complaint against the
District and filed it with the Commission on September
16, 1993. [EX. 19] and received by the District on
September 27, 1993 [EX. 19]. On September 2, 1993
Defendant's requested the record from Fairbanks Police
Department [Ex. 14 page 3]. In September 1993,

Gallentine requested from Pam Hallberg and Lynda Sather
to write a statement regarding what occurred on August
13, 2004 as it was presented in FNSBSD hearing that
occurred toward the end of September 1993[EX. 12, EX
17]

On September 8, 1993, Plaintiff received a letter
stating that the FNSBSD intended to take disciplinary
actions against her, because she had threatened to blow
up a building while she was at the Superintendent's
Office. [EX. 3]. Defendant refused to look at evidence
Plaintiff had been discriminated against at the
disciplinary hearing. [EX. 8]. Following the
disciplinary hearing, Percy Houts, issued a letter
affirming Gallentine's prior decision to ban Plaintiff
from employment for 1993-1994 school-year. [EX. 21].
Houts falsely stated that Sather testified that
Plaintiff Raad was repeating herself to blow up the
building. [EX. 21] Gallentine had previously sent a
letter on September 3, 1993 to all the schools banning
Plaintiff from employment with no time limit. [EX. 22].
Plaintiff later learned that the disciplinary officer,
Percy Houts, had been a hiring authority for several
hires challenged as discriminatory by Plaintiff in her
Alaska Human rights commission complaint. [EX. 23].
The above argument showed inconsistency in the
Defendant's employees' statements.

If the District Court will look at the
inconsistency among the above Defendant's employee's
statements then discrimination and retaliation against

Page 15 of 20

Plaintiff and a relief from Judgement stated in Docket 524 discrimination and retaliation shall be established.

Plaintiff was represented by a counselor that presented her case. The Court should not punish Plaintiff if she lost her case. Plaintiff still believed that Responded discriminated and retaliated against her because of her national origin and religion.

In 2001, Judge Holland in the District court agreed that prima facie case had been established and followed the guideline of the Ninth circuit Court of Appeal by denying attorney fees against Plaintiff when Defendant filed summary judgment by referring to Warren v. City of Carlsbad, 58 F. 3d 439, 444 (9th Cir. 1995). The District court asked Defendant to appeal awarding attorney fees if they do not agree with his decision. Defendant declined. (District Court Docket # 385). Defendant did not respect the confidentiality agreement and release partial information that created bias and prejudice (Docket 543 page 12). In 2003 the Ninth circuit ordered to go back to trial. District court ordered awarding attorney fees for Defendant of an amount of $150,000 stating that the case is frivolous ignoring the guidelines to award attorney fees against Plaintiff. The District Court gave no explanation why the case was frivolous. The District Court failed to show if plaintiff's claims lacked merit, had no foundation or not reasonable, frivolous or brought in a

bad faith. The district Court at three occasions gave contradicting explanation that cannot be reconciled. The district court awarded attorney fees against Plaintiff when stated first  that the case is entirely frivolous then stated that there was "no rational basis for plaintiff allegation of discrimination and that the plaintiff claims were frivolous and totally lacking any factual foundation" (EX 1).  In a later order, the district court did note that Raad presented one "legitimate jury issue" namely, "that she was disciplined inordinately because of her race and or religion after the incident in the superintendent's office." (EX. 1). The District Court declined to follow the guidelines of the Ninth circuit Court of appeal where petition established prima facie case and went to trial upon an order Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185-1198 (9th cir. 2003) Plaintiff can not defend herself if no explanation given to why the case is frivolous and had no foundation.

Plaintiff received right-to sue letter from the EEOC, thus indication that there was "an adequate basis in law and facts" to pursue the claim and indicating that the case was not without merit; Jensen v. Stangel, 762 F. 2d 815, 818 (9th Cir 1985).

The District Court did not find that any of the discoveries sought by Plaintiff was vexatious, frivolous or sought in bad faith. (District court docket 269).

Plaintiff established prima facie case and went to trial Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185, 1187 (9th cir. 2003). In Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995), "Suggesting that a plaintiff who makes out a prima facie case under Title VII cannot be found to have presented a claim that is "Frivolous, unreasonable or groundless Id. At 445. In so stating the Ninth Circuit has reference to the case of Marguart v. Lodge 837, Int'l Ass'n of Machinists, 26 F.3d 842, 853 (8th Circuit 1994).

Furthermore, the U.S. Supreme Court's ruling that Civil Rights plaintiff's do not need any direct evidence of discrimination and can proceed to trial if they establish a prima facie case of discrimination and present evidence showing that the employer's excuse is a pretext. See Reeves v. Sanderson Plumbing Products. Inc., 4 U.S (99-536) 530 U.S. 133 (2000) 197 F. 3d 688.

The district court did note after awarding attorney fees to defendent that Plaintiff presented one "legitimate jury issue" namely, "that she was disciplined inordinately because of her race and or religion after the incident in the superintendent's office." (EX. 1). The District Court failed to reverse awarding attorney fees for Defendant after admitting that Plaintiff presented one "legitimate jury issue". (Ex. 1) This indicated that this case does not lack a reasonable or arguable basis in law of fact which in return make it not frivolous or lack of foundation. The

Page 18 of 20

U.S. Supreme Court stated   that "A claim is frivolous
if it lacks a reasonable or arguable basis in law or
fact. Neitzke v. Williams, 490 U.S. 319, 325,109 S.Ct.
1827, 1831, 104 L.Ed.2d 338, 347 (1989)".

The district court did not give an explanation for
any unusual development at trial referring to AFSMCE v.
County of Nassau, 96 F. 3d 644 (2d Cir 1996)  "The
district court however, points to no such unusual
circumstance here, and I am aware of none…..and there
was no explanation by the district court that takes
account of the prior reversal of summary judgment in
this case, I would reverse the fee award" (EX. 1).

The District Court did not give any adequate
explanation why the fee award was justified. "A fee
award without adequate justification cannot stand" (Ex.
1).   See Tutor-Saliba Corp. v.  City of Hailey, 452 F.
3d 1055, 1065 (9th Cir. 2006); Benton v. Or. Student
Assitance Comm'n , 421 F. 3d 901, 904 (9th Cir. 2005);
Cummings v. Connell, 402, F. 3d 936, 947 (9th Cir.
2005).

The US Supreme Court referred to stringent
standards apply to fee awards against plaintiffs in
civil rights cases. The district court should award a
prevailing Defendant attorney's fees only if the
plaintiff action was frivolous, unreasonable or without
foundation and none of these applied that Plaintiff is
aware of, See Christianburg Garment Co. v. EEOC, 434
U.S. 412, 421-22 (1978). United States Steel Corp. v.

United States, 519 F.2d 359, 362 (CA3) Carrion v.
Yeshiva University, 535 F.2d 722 (Cir Two).

Plaintiff met all the criteria as discussed above
that showed that her case is not frivolous and had
foundation and had rational basis for Plaintiff
allegation of discrimination and retaliation.

For the reasons stated above Plaintiff is asking
this Court to reverse and vacate Awarding attorney fees
without justification and any cost absent that
disposition, Plaintiff is asking this court for an
explanation both as for the reason for the award and as
to the amount as stated in exhibit 1 page 10, and
denied Defendant's Motion To Release Funds To Defendant
Pursuant To Defendant's Writ Of Execution and Plaintiff
respectfully asking this court for exoneration of the
bond to Plaintiff Nada Itani Raad in response to Docket
531 dated July 9, 2007

Order is attached

Respectfully submitted.

DATED THIS 13 DAY OF August, 2007

_____
Nada Raad, pro se

CERTIFICATE OF SERVICE
I hereby certify that a true copy of
the above document and attachments were [x] mailed
[ ] faxed [] hand delivered to:
Peter C. Partnow at:
Lane Powell Spears Lubersky LIP
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
and a courtesy copy excluding exhibits
that are the same as motion for relief from
Judgment was mailed to Robert Sparks
at 1552 Noble Street
Fairbanks, Alaska 99701
this 13 day of August, 2007.

_____
Nada Raad, pro se