

AUG 2 3 2007

CLERK, U.S. DISTRICT COURT
FAIRBANKS, AK

Nada Raad
1300 Viewpointe
Fairbanks, Alaska 99709
Tel: 907-479-9122

IN THE UNITED STATES DISTRICT COURT OF ALASKA

| | |
|---|---|
| NADA I. RAAD ) | |
| Plaintiff ) | |
| v. ) | |
| FAIRBANKS NORTH STAR ) | |
| BOROUGH SCHOOL ) | |
| DISTRICT ) | United States District |
| ) | Court of Alaska |
| Defendant ) | Case No. 97-0068CV (RRB) |

## RESPOND TO DEFENDANT MOTION TO PROPOSED WRIT OF EXECUTION ON PERMANENT FUND DIVIDEND

Hereby Come Plaintiff Raad, Pro se, respectfully asking this Court to deny Defendant Motion To Proposed Writ Of Execution On Permanent Fund Dividend. On August 9, 2007 Plaintiff filed in this Court for Relief from Judgment from attorney fees and cost as stated in Docket 524 Due To Clerical Error Upon FRCP 60(A). Defendant misrepresent information to this Court Plaintiff needed money to pay for her bills and debt that accumulated over the years for being unemployed. District Court was

harsh on Plaintiff on ruling to pay attorney fees and cost instead of ruling on her favor.

This case was not a frivolous case; it has the merit and foundation. The Ninth Circuit dissented unpublished memorandum dated August 24, 2006 explained why the attorney fees should not be awarded to Defendant (EX. 1 pages 6-10). A timely petition for rehearing and rehearing en banc was denied by the United States Court of Appeals for the Ninth Circuit on the following Date September 28, 2006. The US Supreme Court denied the writ of certiorari on February 26, 2007 as many other cases. On April 30, 2007, the U.S. Supreme Court denied petition of rehearing for Writ of certiorari. The majority made assumption for the District Court ruling in regards to awarding attorney fees. Plaintiff should not be punished because she was represented by counselor who argued this case. At no point during the litigation of this case there was any indication from the Court that the case was frivolous or had no foundation. At the beginning of this case Plaintiff represented herself with the help of counselor. Early in this case Judge Holland at the District Court asked Plaintiff to either represented herself or hired an attorney. Plaintiff knew nothing about the legal system and had no choice except hiring counselor to represent her. Over the years Plaintiff became in debt to cover cost of living and cost related to this case. Plaintiff had no choice except to represent herself after the trial with no help from

anyone. Plaintiff does not know up to date why her case is frivolous and why it had no foundation as the District Court stated. Plaintiff can not defend herself if there was no reason given to her to award attorney fees and ruled on favor of Defendant. The Ninth Circuit in its unpublished memorandum agreed that plaintiff establish prima facie case. (EX. 1). The bond that the District Court imposed on Plaintiff caused hardship was unreasonable. Plaintiff went in more debt when she deposed the bond and needed to pay the debt that accumulated over the years for not being employed for full time job. Plaintiff is unable to pay the attorney fees or any other fees to Defendant.

    The Ninth Circuit in its unpublished memorandum cited cases where awarding attorney fees against Plaintiff is in question (EX. 1 pages 6-10). The District Court overlooked the qualification of Plaintiff that was already established during summary judgment in this case. Defendant did not appeal superior qualification of Plaintiff after summary judgment. Plaintiff had master degree, certified in math and science, had years of experience in education which included 8 years as in charge of natural history museum conducting lectures to public, three years as a substitute teacher and temporary teacher position in Fairbanks North Star Borough School district. The District Court did not admit some Plaintiff's exhibits that will support her case. Regards, the Jury either

did not understand the instructions or overlook the instructions.

This case is a title VII of the Civil Rights Act of 1964 Civil Rights act, 42 U.S.C. 2000e et seq,. The District Court [Docket 353] and the Ninth Circuit in Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185-1198 (9th cir. 2003) has held that Plaintiff established a prima facie case of discrimination that she raised for Title VII 2000e et seq. (EX. 1).

Plaintiff was entitled to the science position at Lathrop High School for the school year 1993- 1994 as a resolution for her after complaint to Defendent EEO Charles Moore in 1992. Plaintiff complained to EEO in 1992 regarding rejecting her for a science position at Tanana Middle School because of her accent as confirmed during deposition of Tanana Middle School Principal [Ex. 7]. The record reflected outstanding recommendations regarding Plaintiff qualifications. The District Court opinion on summary judgment reflected the superior qualification of Plaintiff and referred to a case by another circuit for a need of "slap on the face to show superiority of qualification. The Ninth Circuit Court of Appeal rejected this argument Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185-1198 (9th cir. 2003). Plaintiff had priority over a new hire because of her temporary teaching position for the school year 1992-1993. Stack and Ponder were applicants that were hired as temporary teaching

position during the 1992-1993 school year. Both were rehired the following year with no competitive interview (EX. 2). The attached exhibits showed that Stack was rehired with out competitive interview and Ponder was treated as any full time teacher where evaluation was conducted to her during 1992-1993 school year and rehired before any new applicants. This was the same year that Plaintiff was hired as a temporary teaching position and was informed by EEO that she had a priority over new hire (EX. 3 pages 3 and 20). Stack went through competitive interview during 1992-1993 school year for a temporary teaching position but he did not go through another competitive interview when rehired for a full time teaching position the following year. [EX. 2]. Teresa Ponder was hired for a temporary position during 1992-1993 school year and was rehired for a full time position on June 14, 1993 before even the hiring pool for the following year was established [EX. 2]. The feed back sent by Defendant to new applicants was on July 1993 [EX. 24]. Teresa Ponder was hired before July 1993. Defendant insisted over the years that applicants that held temporary teaching positions had no preference before new hires. The former documents showed that this was not true at the period Plaintiff held a temporary teaching position during 1992-1993 school year as Stack and Ponder. The Court made a clerical error of not looking at this evidence to rule on favor of Plaintiff. Assuming Plaintiff had to compete with Risa Roy, comparing

qualification Plaintiff had a master degree and certification in science and math, volunteer as elementary teacher in public schools in Beirut, Lebanon during the civil war, more than 11 years of experience in education, substituting for 3 years in FNSBSD and held a temporary teaching position in FNSBSD. Risa Roy did not have the extensive experience years in education as Plaintiff. See International Brotherhood of Teamsters v. United stated, 431, U.S. 324, 335 n. 15, 97 S.Ct, 1843, 1854 n. 15, 52 L. Ed. 2d 396 919977); Washington v. Garrett 10 F.3d at 1434. Instead Plaintiff was falsely accused that she threatened to blow up the building and refusing to leave stating in the police log" A Lebanese woman threatened to blow up the building and refusing to leave." [EX. 4]. The police log was neither logged by officer Ring nor were changes made as indicated by Officer Ring and Dispatcher Huffman (EX. 25, EX. 26). It was also an oversight from the District Court not to realize that Plaintiff did not make any threat and was not yelling or screaming when she went to see the superintendent as stated above (See Docket 532). The suspension against Plaintiff was based on false allegations and it was only after District Attorney declined to press charges to cover up for discrimination and retaliation by Defendant. Defendant spread rumors about the alleged false bomb threat because of Plaintiff national origin and religion which was a burden for Plaintiff to find a full time job for many years and caused more financial

hardship for Plaintiff. (Ex. 5).

There was contradiction between Lynda Sather and Pam Hallberg statements regarding the false accusation and Defendant's employees' statements. See Glover v. BIC Corp, 6 F.3d 1318, 1329 (9th Cir. 1993) Scott v.IBM Corp, 196 F.R.D. 233, 248-251 (D. New Jersey, 2000) where inconsistency will implicate discrimination. Plaintiff needed to show that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or other wise not believable or directly showing that unlawful discrimination more likely motivated the employer; Civil Rights Act of 1964 701 at seq as amended 42 U.S.C.A. 2000e seq." Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185, 1187-88 (9th cir. 2003).

In 1993 Moore told Plaintiff that the District did not want to hire her because of her accent. [EX. 6, Ex. 7]. Plaintiff told Moore that she intended to contact an attorney regarding her employment matter. [EX. 3, Ex. 6]. Plaintiff then tried to make an appointment to see Rick Cross, the District Superintendent. [EX. 8]. Plaintiff tried to explain to the Pam Hallberg that she was frustrated and upset and did not want her anger to "blow up" [EX. 8]. Plaintiff was not loud or screaming or yelling when she was in the superintendent's reception area [EX. 9, EX. 10]. Pam Hallberg told plaintiff that the superintendent will not see unsuccessful applicant [EX. 9]. Upon Plaintiff's second visit to the superintendent's reception area Lynda

Sather came out of her office and asked Plaintiff to go back to Moore's office for discrimination [EX. 11]. Pam Hallberg testified that she told Cross that Plaintiff wanted to see him. [EX. 9, EX. 12]. Cross testified that no one told him that Plaintiff wanted to see him. [EX. 9, EX 13]. Defendant's employees who accused Plaintiff of making a threat to blow up the building, Pam Hallberg and Lynda Sather, admitted that Plaintiff Raad spoke with an accent [EX. 10] and was difficult to understand [EX. 9, EX 10]. The superintendent, Rick Cross denied any knowledge that Plaintiff was Lebanese [EX. 13] at the date of his deposition in 1998. Rick Cross was previously interviewed by Alaska Human Rights Commission and was familiar with Plaintiff's discrimination complaint with Alaska Human Rights Commission prior to his deposition [EX. 13]. Hallberg informed Cross about Plaintiff in 1993. [EX. 12} Hallberg called the Fairbanks Police Department on August 13, 1993, and reported that a "Lebanese woman" had threatened to blow up a building and refused to leave the building. [EX. 4]. No one had asked Plaintiff to leave the building, before calling the police. [EX. 9, EX. 10, EX. 13]. In her statement to the police, Sather stated that the Personnel Director, Gallentine, had called Sather earlier on the morning of August 13, and told Sather that an upset applicant had seen her and Moore and wasn't satisfied and still wanted to see Superintendent Cross. [EX. 11]. Gallentine called the superintendent office and

informed them that unhappy applicant referring to plaintiff was coming to see the superintendent (EX. 9, EX. 11, EX. 12, EX. 14]. Sather came from her office when Plaintiff arrived to the superintendent's reception area. Sather called Pam Hallberg to talk to Plaintiff described her as unhappy applicant [EX. 12] and went back to her office. Hallberg confronted Plaintiff and in a sarcastic manner asked Plaintiff if this was a matter of life or death in response to Hallberg, Plaintiff replied with a yes [EX. 11]. Plaintiff informed Plaintiff that she was angry and frustrated and she did not want to blow up. [EX. 3, EX. 8]. Hallberg informed Plaintiff that the superintendent was on the phone. Plaintiff Lift to Moore office to ask him to come with him to the superintendent office but Moore insisted that Plaintiff to go back by herself to try to see the superintendent Rick Cross [EX. 8]. Plaintiff went the second visit to see the superintendent and Halberg informed Plaintiff that the superintendent is not going to see unsuccessful applicant [EX. 9] Hallberg had spoken to regarding the "blow up" incident prior to calling the police, with Sather, Lovell and Cross. [EX. 12]. Gallentine was aware of Plaintiff's national origin and religion and Plaintiff's personnel file stated that she was Lebanese. [EX. 15]. The Fairbanks Police Department ("FPD") has a log report showing a call was placed to FPD by Pam Hallberg at 9:57 A.M. reporting that a "Lebanese woman" threatened to blow the building up and

refused to leave. [EX. 4] See also Dispatched Huffman and officer Ring [EX. 25, EX. 26] The FPD responded to Hallberg's complaint and escorted Plaintiff from the building. [EX. 3, EX. 16].

The police arrived at EEO Charles Moore Office where Plaintiff was sitting and not in a possession of explosive device [EX. 16]. In front of Charles Moore Plaintiff ask the Police why they were her, the Police said that they received a call stating Plaintiff threaten to blow up the building. Plaintiff stated to the police that she was talking about her anger in front of EEO Charles Moore [EX. 16]. The Police stated that "Raad speaks in accented English"[EX. 16] Defendant's employee, Anita Gallentine, went to the police department and filled out a complaint stating that she was concerned that Plaintiff could construct an explosive device [Ex. 14]. This statement demonstrated Ms. Gallentine's prejudice against Plaintiff's National Origin and religion. Gallentine and/or Moore who went to the station requested D.A.O. screening [Ex. 16, EX. 13]. The District attorney rejected the case [Ex. 16]. Charles Moore, EEO whom Plaintiff complained to and who heard Plaintiff telling the police that she was talking about her anger went with Gallentine to the Police Department to press charges against Plaintiff knowingly he knew that Plaintiff was talking about her anger.

Fairbanks Police Officer Aaron Ring interviewed Hallberg and Sather at approximately an hour and one-

half after the alleged incident. [EX. 11, EX. 16].
Neither Hallberg, nor Sather indicated that they were
immediately concerned by Plaintiff's statement. [EX.
11] .Officer Ring when asked Hallberg shortly after the
alleged accident and could not remember what Plaintiff
said:

> Officer Ring: I know that she had somewhat of an accent,
> and what she had told the officer was that she had said - something about herself blowing up, meaning her temper.
> Pam Hallberg: No. That wasn't the impression I got, because she just said either I'll blow up this place, or I'll blow up this building.
> Officer Ring: Well, which? [EX. 11]

Lynda Sather went back to her office [EX. 11, Ex. 12]. The whole conversation between Pam Hallberg and Plaintiff Raad should take less than a minute. Lynda Sather came out of her office after Pam Hallberg talked to Plaintiff Raad [EX. 9, EX. 11]. Both Pam Hallberg and Lynda Sather continued to do their work after Plaintiff left {EX. 11, EX. 18]. Hallberg was working behind the counter [EX. 11] Hallberg told Raad that the superintendent is not going to see unsuccessful applicant where Sather denied that this happened [Ex. 10]. Sather came out of her office later {EX. 12]. Both Sather and Hallberg denied if Plaintiff was repeating

her self [EX. 18]. Hallberg denied if Sather talked to Raad in her presence [EX. 18]

Hallberg called the police and gave them false information stating that Raad a Lebanese woman threaten to blow up the building and refusing to leave. Both Hallebrg and Sather admitted that Raad did not ask Plaintiff to leave [EX. 9, Ex. 13]. Hallberg and Sather stated that Plaintiff left [EX. 11, EX, 18]

Hallberg stated when Gallentine asked her if Plaintiff Raad get close to her after Plaintiff returned the second time to the superintendent office [EX. 18]:

Hallberg:as close as possible. There's a counter, if you look at the superintendent's office, there's kind of a work station and there's a higher counter and she leaned over the counter to talk to me
Gallentine: and you were sitting down?
Hallberg: and then I stood up after that
Gallentine: yes
Hallberg: and she kind of straightened up too. [EX. 18].
Gallentine: Did you then call the police?
Hallberg: I informed Mr. cross what the conversation was, and he said to, you know, call the police.
Gallentine: Did you specifically call them?
Hallberg: Yes I did

Hallberg called the police after the second time Plaintiff visited the superintendent office and telling Plaintiff that the superintendent is not going to see unsuccessful Applicant {EX. 18}. Hallberg changed the story shortly after Gallentine redirect her in her question and stated that she called the police after Plaintiff visited the superintendent office the first time[EX. 18]. The District insisted for years that the Police was called immediately after the false accusation. (EX. 18] Pam Hallberg statement contradicted what Defendant and Defendant employees falsely claimed through all these year that they felt threat and that's why the police was called immediately. Plaintiff left the superintendent office when she was asked to go back to EEO Moore's office for discrimination and was never asked to leavge the building before the police was called[EX. 11]. Plaintiff did not make any threat.

Sather could not tell who made the call to the police [EX. 18] and insisted that the police was called after the first time Plaintiff was in the office [EX. 18]. Sather went back to her office and continued to do work [EX. 18]. In Sather's written statement she said that Plaintiff was difficult to understand but then she changed her mind and stated that she did not have any difficulty understanding Plaintiff [EX. 17, EX 18]. Sather denied if Hallberg told Plaintiff that the superintendent is not going to see unsuccessful applicant [EX. 10]. Pam Hallberg admitted that she

informed Plaintiff Raad that the superintendent is not going to see unsuccessful applicant [EX. 9]. Plaintiff was not yelling or shouting and was not threatening [EX. 9, EX. 10]. Sather stated that she could not understand Plaintiff [EX. 10, EX. 17]. Both never asked Apepllant Raad for clarification [EX. 10]. On August 18, 2004, without the knowledge of Plaintiff, the Fairbanks District Attorney's Office declined to press any charges against Plaintiff upon the District's request [EX. 14, EX. 16]. On August 30 or 31, 1993, Plaintiff applied for substitute teaching positions with the District. [EX. 3, EX 6]. On August 27, 1993, Plaintiff contacted the Alaska Human Rights Commission and submitted her intake questionnaire regarding the reprisal, national origin and religious discrimination by the District in failing to hire her during 1991-1993. [EX. 3}. Plaintiff signed her official Alaska Human Rights discrimination complaint against the District and filed it with the Commission on September 16, 1993. [EX. 19] and received by the District on September 27, 1993 [EX. 19]. On September 2, 1993 Defendant's requested the record from Fairbanks Police Department [Ex. 14 page 3]. In September 1993, Gallentine requested from Pam Hallberg and Lynda Sather to write a statement regarding what occurred on August 13, 2004 as it was presented in FNSBSD hearing that occurred toward the end of September 1993[EX. 12, EX 17]

On September 8, 1993, Plaintiff received a letter stating that the FNSBSD intended to take disciplinary actions against her, because she had threatened to blow up a building while she was at the Superintendent's Office. [EX. 3]. Defendant refused to look at evidence Plaintiff had been discriminated against at the disciplinary hearing. [EX. 8]. Following the disciplinary hearing, Percy Houts, issued a letter affirming Gallentine's prior decision to ban Plaintiff from employment for 1993-1994 school-year. [EX. 21]. Houts falsely stated that Sather testified that Plaintiff Raad was repeating herself to blow up the building. [EX. 21] Gallentine had previously sent a letter on September 3, 1993 to all the schools banning Plaintiff from employment with no time limit. [EX. 22]. Plaintiff later learned that the disciplinary officer, Percy Houts, had been a hiring authority for several hires challenged as discriminatory by Plaintiff in her Alaska Human rights commission complaint. [EX. 23]. The above argument showed inconsistency in the Defendant's employees' statements.

If the District Court will look at the inconsistency among the above Defendant's employee's statements then discrimination and retaliation against Plaintiff and a relief from Judgment stated in Docket 524 discrimination and retaliation shall be established.

Plaintiff was represented by a counselor that presented her case. The Court should not punish

Plaintiff if she lost her case. Plaintiff still believed that Responded discriminated and retaliated against her because of her national origin and religion.

In 2001, Judge Holland in the District court agreed that prima facie case had been established and followed the guideline of the Ninth circuit Court of Appeal by denying attorney fees against Plaintiff when Defendant filed summary judgment by referring to <u>Warren v. City of Carlsbad</u>, 58 F. 3d 439, 444 (9th Cir. 1995). The District court asked Defendant to appeal awarding attorney fees if they do not agree with his decision. Defendant declined. (District Court Docket # 385). Defendant did not respect the confidentiality agreement and release partial information that created bias and prejudice (Docket 543 page 12). In 2003 the Ninth circuit ordered to go back to trial. District court ordered awarding attorney fees for Defendant of an amount of $150,000 stating that the case is frivolous ignoring the guidelines to award attorney fees against Plaintiff. The District Court gave no explanation why the case was frivolous. The District Court failed to show if plaintiff's claims lacked merit, had no foundation or not reasonable, frivolous or brought in a bad faith. The district Court at three occasions gave contradicting explanation that cannot be reconciled. The district court awarded attorney fees against Plaintiff when stated first that the case is entirely frivolous then stated that there was "no rational basis

for plaintiff allegation of discrimination and that the plaintiff claims were frivolous and totally lacking any factual foundation" (EX 1). In a later order, the district court did note that Raad presented one "legitimate jury issue" namely, "that she was disciplined inordinately because of her race and or religion after the incident in the superintendent's office." (EX. 1). The District Court declined to follow the guidelines of the Ninth circuit Court of appeal where petition established prima facie case and went to trial upon an order Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185-1198 (9th cir. 2003) Plaintiff can not defend herself if no explanation given to why the case is frivolous and had no foundation.

    Plaintiff received right-to sue letter from the EEOC, thus indication that there was "an adequate basis in law and facts" to pursue the claim and indicating that the case was not without merit; Jensen v. Stangel, 762 F. 2d 815, 818 (9th Cir 1985).

    The District Court did not find that any of the discoveries sought by Plaintiff was vexatious, frivolous or sought in bad faith. (District court docket 269).

    Plaintiff established prima facie case and went to trial Raad v. Fairbanks North Star Borough School District, 323 F. 3d 1185, 1187 (9th cir. 2003). In Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995), "Suggesting that a plaintiff who makes out a

prima facie case under Title VII cannot be found to have presented a claim that is "Frivolous, unreasonable or groundless Id. At 445. In so stating the Ninth Circuit has reference to the case of Marquart v. Lodge 837, Int'l Ass'n of Machinists, 26 F.3d 842, 853 (8th Circuit 1994).

Furthermore, the U.S. Supreme Court's ruling that Civil Rights plaintiff's do not need any direct evidence of discrimination and can proceed to trial if they establish a prima facie case of discrimination and present evidence showing that the employer's excuse is a pretext. See Reeves v. Sanderson Plumbing Products. Inc., 4 U.S (99-536) 530 U.S. 133 (2000) 197 F. 3d 688.

The district court did note after awarding attorney fees to defendent that Plaintiff presented one "legitimate jury issue" namely, "that she was disciplined inordinately because of her race and or religion after the incident in the superintendent's office." (EX. 1). The District Court failed to reverse awarding attorney fees for Defendant after admitting that Plaintiff presented one "legitimate jury issue". (Ex. 1) This indicated that this case does not lack a reasonable or arguable basis in law of fact which in return make it not frivolous or lack of foundation. The U.S. Supreme Court stated that "A claim is frivolous if it lacks a reasonable or arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338, 347 (1989)".

The district court did not give an explanation for any unusual development at trial referring to <u>AFSMCE v. County of Nassau</u>, 96 F. 3d 644 (2d Cir 1996) "The district court however, points to no such unusual circumstance here, and I am aware of none…..and there was no explanation by the district court that takes account of the prior reversal of summary judgment in this case, I would reverse the fee award" (EX. 1).

The District Court did not give any adequate explanation why the fee award was justified. "A fee award without adequate justification cannot stand" (Ex. 1).   See <u>Tutor-Saliba Corp. v. City of Hailey</u>, 452 F. 3d 1055, 1065 (9th Cir. 2006); <u>Benton v. Or. Student Assitance Comm'n</u>, 421 F. 3d 901, 904 (9th Cir. 2005); <u>Cummings v. Connell</u>, 402, F. 3d 936, 947 (9th Cir. 2005).

The US Supreme Court referred to stringent standards apply to fee awards against plaintiffs in civil rights cases. The district court should award a prevailing Defendant attorney's fees only if the plaintiff action was frivolous, unreasonable or without foundation and none of these applied that Plaintiff is aware of, See <u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421-22 (1978). <u>United States Steel Corp. v. United States,</u> 519 F.2d 359, 362 (CA3) <u>Carrion v. Yeshiva University,</u> 535 F.2d 722 (Cir Two).

Plaintiff met all the criteria as discussed above that showed that her case is not frivolous and had

foundation and had rational basis for Plaintiff allegation of discrimination and retaliation.
For the reasons stated above Plaintiff is asking this Court to reverse and vacate Awarding attorney fees without justification and any cost absent that disposition, Plaintiff is asking this court for an explanation both as for the reason for the award and as to the amount as stated in exhibit 1 page 10, and denied Defendant's Motion To Release Funds To Defendant Pursuant To Defendant's Writ Of Execution and Plaintiff respectfully asking this court denying Defendant Motion To Proposed Writ Of Execution On Permanent Fund Dividend.

Order is attached

Respectfully submitted.

DATED THIS 23 DAY OF August, 2007

_____
Nada Raad, pro se

CERTIFICATE OF SERVICE
I hereby certify that a true copy of
the above document and attachments were [x] mailed
[ ] faxed [] hand delivered to:
Peter C. Partnow at:
Lane Powell Spears Lubersky LIP
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
and a courtesy copy excluding exhibits
that are the same as motion for relief from
Judgment was mailed to Robert Sparks
at 1552 Noble Street
Fairbanks, Alaska 99701
this __ day of August, 2007.

_____
Nada Raad, pro se