1

1

2

3

4                    IN RE:   MATTER CONCERNING NADA RAAD

5

6

7           TRANSCRIPT OF TAPE RECORDED HEARING PROCEEDINGS

8

9                  BEFORE PERCY HOUTS, HEARING CHAIR

10

11                  Transcribed from Tape Recording

12

13

14                  Pages 1 through 97, inclusive

15                        Volume 1 of 1

16

17

18

19

20

21

22

23   Transcribed by:

24   CAROL A. McCUE, RMR

25   Heartland Court Reporters

PLAINTIFF'S
EXHIBIT

CASE
NO.  F91/00686
     (RRB)
EXHIBIT
NO.  4

HEARTLAND COURT REPORTERS 907-452-6727



Exhibit 8 page   1

2

```
 1              A P P E A R A N C E S

 2

 3    For School District:

 4              ANITA GALLENTINE

 5

 6    For Ms. Raad:

 7              WILLIAM B. SCHENDEL, ESQ.

 8              SCHENDEL & CALLAHAN

 9              613 Cushman Street, Suite 200

10              Fairbanks, Alaska 99701

11              456-1136

12

13    Transcribed by:

14              CAROL A. McCUE, RMR

15              Heartland Court Reporters

16

17

18

19

20

21

22

23

24

25
```

Exhibit 8 page  2



3

1                          I N D E X

2     OPENING ARGUMENTS:                                    Page

3     By Ms. Gallentine:                                      5

4     By Mr. Schendel:                                        6

5     WITNESSES FOR THE SCHOOL DISTRICT:

6     CHARLES MOORE:

7     Direct          Cross-Exam          Redirect

8      9                 18                  32

9     LYNDA SATHER:

10    Direct          Cross-Exam          Redirect

11    33                37                  42

12    PAM HALLBERG:

13    Direct          Cross-Exam          Redirect

14    43                48                  51

15    WITNESSES FOR NADA RAAD:

16    NADA RAAD:

17    Direct          Cross-Exam

18    53                77

19    MR. RAAD:  (First name unknown.)

20    Direct          Cross-Exam

21    82                88

22    CLOSING ARGUMENTS                                   Page

23    By Ms. Gallentine:                                    89

24    By Mr. Schendel:                                      91

25

Exhibit 8 page   3

472

4

```
 1              P R O C E E D I N G S

 2              (The following is a transcription of the hearing

 3              proceedings regarding Mrs. Nada Raad.)

 4         MR. HOUTS:  I'm going to handle it kind of

 5    informal, if that makes sense to you.  And what I'm going

 6    to end up doing is I'll hear opening statements from each

 7    of you.  You'll each have an opportunity, then we'll

 8    begin with the District to ask for any witnesses that you

 9    have, present the statements that you want, the other

10    side will be allowed to question.  Then you'll be allowed

11    to requestion again if you need to for clarification

12    purposes.

13         And at the end I'll ask you each for your

14    summary of what you feel you've come up with.  And then I

15    will, in the future, render a written decision to you.  I

16    will make a copy of the tape available to you so you can

17    have a copy of the tape also, as well as us having one.

18         With that, I will ask you also to present only

19    information that is relevant to the situation that's

20    taken place here, and not bring in other extraneous

21    situations or circumstances that has taken place in the

22    past or any other prior grievances that anybody may

23    have.  What else can I tell you.

24         With that, I guess I'll begin and ask Anita if

25    you have some opening statement you would like to give?
```

HEARTLAND COURT REPORTERS 907-452-6727

Exhibit 8 page   4



1           MS. GALLENTINE:  Yes, just a few.

2                OPENING STATEMENT

3           MS. GALLENTINE:  Miss Nada Raad was a teacher

4      applicant with the District and has been a substitute in

5      our District since the spring of 1990.  On Friday, August

6      13th, 1993 at around 7:30 in the morning, she came in to

7      meet with Charles Moore concerning the selection process

8      for a chemistry position at Lathrop High School.

9           After meeting with Charles for over an hour, she

10     went to the superintendent's office area where she

11     demanded to meet with Mr. Rick Cross, the superintendent

12     of schools.  She appeared to be very agitated and

13     displayed aggressive tendencies.

14          When told that the superintendent could not see

15     her, she threatened to blow up the building if she could

16     not see him.  She left the superintendent's area shortly

17     thereafter and returned to Charles Morris' office area.

18          In the meantime, the police were called and when

19     Charles relayed to Miss Raad that she should leave the

20     building as the police had been called, Miss Raad's

21     response was the police should not have been called as

22     somebody was going to get hurt.

23          With the police now standing outside of Charles'

24     office area, Miss Raad then left.  Then around the end of

25     August, Ms. Raad submitted her application for substitute

Exhibit 8 page  5                        474

1    teaching for the District for the '93, '94 school year.

2    On September 3rd, 1993, I sent Miss Raad a certified

3    letter informing her that the District would not be

4    employing her as a permanent teacher or as a substitute

5    due to the incident that occurred on August 13th.

6          And that's all I have for opening comments.

7          MR. HOUTS:  Mr. Schendel?

8          MR. SCHENDEL:  Yes, on behalf of Ms. Raad.

9                OPENING STATEMENT

10         MR. SCHENDEL:  The background to what happened

11   on August 13th of this year starts in the fall, in the

12   summer of 1992, when Ms. Raad applied for a teaching

13   slot, and specifically was interested in a position in

14   Tanana.  She was denied that position.  She then

15   approached Charles Moore in his capacity as EEO officer,

16   starting on September 23rd of 1992, and had a series of

17   discussions with him about what she believed to be her

18   unfair treatment and the denial of her desire to teach at

19   Tanana.

20         Specifically, on October 2nd, 1992, Ms. Raad

21   understood that Mr. Moore entered into a commitment with

22   her that was twofold.  One, that because of what he

23   agreed had been the unfair treatment with regard to her

24   application to teach at Tanana, he would commit that she

25   would ultimately receive a full time teaching job; and



Exhibit 8 page  6

7

1    second of all, that in the meantime, he would make his

2    best efforts and would therefore commit to finding a

3    long-term substitute teaching job for her.

4         He repeated that commitment and, in fact, acted

5    on the second part of it, when in April of 1993, Ms. Raad

6    was given a long time or long term in the sense of a

7    couple months teach teaching job at Ryan, which

8    (indiscernible) completed.

9         It was on the basis of that partially filled

10   commitment that Ms. Raad continued to trust Mr. Moore and

11   had continuing contacts with him during the summer of

12   1993, in April, May and June.  It was only on August 3rd

13   for the first time, August 3rd, 1993, that Mr. Moore's

14   commitment to Ms. Raad was questioned, and it was

15   specifically ten days later on August 13th that Mr. Moore

16   denied having made any commitment to Ms. Raad.

17        Ms. Raad was understandably upset by that, and

18   after talking to Mr. Moore and trying to rectify the

19   situation, did go to the superintendent's office, was

20   agitated, but specifically did not threaten to blow up

21   the building and specifically did not threaten to harm.

22        As you will hear from Ms. Raad's testimony, she

23   speaks in such a way that permits people to misunderstand

24   what she says.  She will repeat exactly what she said

25   that day.  She indicated that she would blow up, that her

HEARTLAND COURT REPORTERS 907-452-6727

Exhibit 8 page  7



8

1    emotions were about to boil, and that she might have to

2    take legal action, but at no time did she mention blowing

3    up anything.  She mentioned herself blowing up, her

4    temper blowing, and she mentioned that she might have to

5    take legal action that would hurt people, but she did not

6    at any point threaten harm of any sort to the facilities

7    or any of the personnel of the school District.  Thank

8    you.

9         MR. HOUTS:  Okay.  Have any of you -- the

10   background information that you did give, I just need to

11   have you both aware again that I'm going to be sticking

12   to the issue of the August 13th situation that took place

13   in my decision I'm going to make here.  And I understand

14   the background and leading up to the Tanana situation,

15   but I'm not going to get involved in that aspect, I'm

16   going to be involved in what transpired actually here at

17   the building on the 13th.

18        Okay.  With that, I'll ask Anita if you

19   have -- if you will continue and at this point if you

20   have a witness to call.  Go ahead.

21        MS. GALLENTINE:  My first witness is Charles

22   Moore.

23   /

24   /

25   /

Exhibit 8 page  8

476

60

1    He said that Jerry Hartsock would not -- I was very

2    specific with that commitment, I said what about your

3    commitment.  And I mentioned about position because many

4    science teachers retired, and I mentioned this to Charles

5    Moore that there would be a lot of positions.  According

6    to the board meeting agenda, many people retired or left

7    with leave without pay.

8           So I told him what about your commitment at

9    Lathrop with Jerry Hartsock?  He said oh, Jerry Hartsock

10   would love to have you for your multicultural background.

11   He never deny it until August 3.  He was negative but he

12   did not deny it.

13       Q.   Well, what specifically happened on August 3?

14       A.   August 3 when I went there, we were talking

15   about a commitment again, the position to be interviewed

16   for the job.  And he asked me about my background, he

17   asked me about my family background, and he asked me

18   about if I wear a veil.

19       Q.   Pardon?

20       A.   If I wear a veil.

21       Q.   A veil?

22       A.   A veil.  A black one.  And I was upset, I told

23   him if anyone had any, any concern, any problem about my

24   accent or about my background, they should not be in

25   education.



Exhibit 8 page  9

70

1   come and talk to me.

2       Q.   And then Pam Hallberg came out and talked to

3   you?

4       A.   Came out.   And when I told her please, I need to

5   see the superintendent.   She said is it a matter of life

6   or death?   I said yes, for me, it's a matter of life or

7   death, I need to see him.   It's personal, I need to talk

8   to him.   And then she said, he's on the phone, let me see

9   what can I do.   I told him I'm very angry, I'm very

10  frustrated, I don't want to blow up.   And I did not say,

11  I don't want to blow up, blow up the building.   I never

12  mentioned this to them.

13      Q.   What did you -- what did you say?   What words

14  did you use?

15      A.   I'm angry, I'm frustrated, I don't want to blow

16  up.

17      Q.   Blow up?   Blow out?

18      A.   Blow up.

19      Q.   Okay.   What did she say in response to that?

20      A.   She said, let me see, he's on the phone, let me

21  see if I can see him, if he can see you.   And then at

22  that moment I thought that maybe if I went back to

23  Charles Moore office and bring him back with me to

24  arrange an appointment, this might help.   And that's the

25  reason I left their office.   I went back.   The secretary

HEARTLAND COURT REPORTERS 907-452-6727

Exhibit 8 page   10